FILED
United States Court of Appeals
Tenth Circuit

January 2, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VICTOR CORNELL MILLER,

    Petitioner - Appellant,

v.

JOE ALLBAUGH,

    Respondent - Appellee.

No. 19-5041
(D.C. No. 4:15-CV-00703-JED-JFJ)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY\***
_____

Before **LUCERO**, **O'BRIEN**, and **CARSON**, Circuit Judges.
_____

Petitioner Victor Cornell Miller, an Oklahoma prisoner appearing pro se, seeks a

certificate of appealability (COA) to challenge the district court's denial of his 28 U.S.C.

§ 2254 habeas petition. We deny Miller's request for a COA and dismiss this matter.

I.

In 2002 an Oklahoma jury convicted Miller of two counts of first-degree murder.

Adopting the jury's recommendation, the trial court sentenced him to life without the

possibility of parole for the murder of Mary Agnes Bowles and to death for the murder of

Jerald Thurman.

_____

\* This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Miller appealed to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA reversed his convictions and sentences and remanded for a new trial. *Miller v. State* (*Miller I*), 98 P.3d 738, 743, 748 (Okla. Crim. App. 2004). In 2008 he was retried on both murder counts. This time, on the jury's recommendation, he received death sentences for both murders.

Miller again appealed to the OCCA. The OCCA affirmed his convictions. But it found that the death sentence for the Bowles murder had violated Miller's right to be free from double jeopardy, so it modified that sentence to life without the possibility of parole. *See Miller v. State* (*Miller II*), 313 P.3d 934, 949-50, 1005 (Okla. Crim. App. 2013). It also reversed the death sentence for the Thurman murder due to sentencing-related errors and remanded for resentencing on that count. *Id.* at 1000.

On remand, Miller waived his right to a jury trial for the resentencing. The trial court sentenced him to life without the possibility of parole for the Thurman murder and ordered that the sentence be served consecutively to the life sentence for the Bowles murder. Miller then filed this habeas petition in federal district court. The district court denied his petition and denied his request for a COA.

II.

We first consider our appellate jurisdiction. The district court entered final judgment dismissing Miller's habeas petition on March 29, 2019. His notice of appeal (NOA) was due within 30 days. *See* Fed. R. App. P. 4(a)(1)(A). The thirtieth day following March 29 was April 28, 2019. But that day was a Sunday, making the NOA due on April 29. *See* Fed. R. App. P. 26(a)(1)(C).

2

Miller filed his NOA on May 2, three days late. This court issued him an order to show cause regarding the NOA. In response he filed a memorandum brief, a sworn declaration, and other papers. The evidence includes an envelope containing a cancelled postage stamp. The envelope is stamped in two places in red with the words "LEGAL MAIL." Next to one of these red stamps appears an initialed date-stamp bearing the date April 29, 2019. Miller's declaration, sworn under penalty of perjury pursuant to 28 U.S.C. § 1746, states that on April 29, 2019, he placed his NOA in the prison mailbox for forwarding to the United States District Court.

The "prison mailbox rule" permits an inmate to establish timely filing by showing (1) that he used the prison's legal mail system, if such a system was available; and (2) that by the filing deadline, he placed the document to be filed in the prison's legal mail system with first-class postage prepaid. *See* Fed. R. App. P. 4(c)(1)(A)(ii). The evidence establishes the timely filing under this Rule of the NOA on April 29, 2019. *See id.* Among other things, the evidence that the envelope contained a valid postage stamp established that the postage was "prepaid," and the initialed date-stamp established that Miller deposited the envelope on April 29. We therefore have jurisdiction over this matter.

## III.

Miller requires a COA to appeal the district court's denial of habeas relief. *See* 28 U.S.C. § 2253(c)(1)(A). To obtain a COA, he must make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court rejects a claim on the merits, the petitioner must demonstrate "that reasonable jurists would find

3

the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But when a district court has dismissed a claim on procedural grounds, the petitioner must show that reasonable jurists could debate both (1) the validity of the court's ruling on the constitutional claim and (2) the correctness of the court's procedural ruling. *See id.* Our "inquiry does not require full consideration of the factual or legal bases adduced in support of the claims," but rather "an overview of the claims" and "a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a state appellate court has adjudicated a claim on the merits, the petitioner must demonstrate that its decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted). We construe Miller's petition and pro se appellate filings liberally but do not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

IV.

In its order denying habeas relief, the district court quoted the OCCA's lengthy summary of the evidence presented at Miller's 2008 trial. *See* R., Vol. 5 at 116-23 (quoting *Miller II*, 313 P.3d at 943-49). Because the parties are familiar with the facts,

4

we find it unnecessary to reiterate the OCCA's summary here. We will describe the facts as necessary as they pertain to the claims presented.

## V.

### A. Heightened Standard of Proof

Miller argues that because his was originally a capital case, it required the observance of stricter standards and protections than those required by a non-capital case. He contends the OCCA and the federal habeas court failed to apply these applicable heightened standards when assessing his claims. But by the time he filed his habeas petition the Oklahoma state courts had removed the possibility of a death sentence for either of his convictions. He fails to explain how reasonable jurists would find it debatable that the alleged error affects his current judgment and sentences. He has not shown his entitlement to a COA on this claim.

### B. IAC Claims

Miller presented multiple claims that he received ineffective assistance of counsel (IAC) at trial. The OCCA applied the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to these claims. Under *Strickland*, a petitioner must satisfy a two-part test. First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Id.* at 687-88. Second, he must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Under AEDPA, a state court's decision on ineffective assistance claims is entitled to "doubly deferential" review, giving "both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (internal quotation marks omitted). Following this principle, the district court stated that "on habeas review, this Court's task is not to determine whether counsel's performance was deficient and prejudicial. Rather, the Court must determine whether it was objectively reasonable for the state court . . . to reject the defendant's [IAC] claim." R., Vol. 5 at 135. Miller seizes on this language to suggest that the district court ignored the *Strickland* standard, failed to conduct a sufficiently comprehensive review of his ineffectiveness claims, and simply adopted the OCCA's reasoning concerning these claims because it was not "objectively unreasonable." COA Appl. at 7.

But the district court discussed the OCCA's disposition of each of Miller's IAC claims. *See* R., Vol. 5 at 136-42. It concluded that upon review of the state-court record, the OCCA's decision, and the parties' briefs, it found nothing objectively unreasonable about the OCCA's application of *Strickland* to these claims and no evidence that the OCCA's determination rested on an unreasonable determination of the facts. Thus, it is not debatable that the district court properly applied the applicable AEDPA review standards to the OCCA's *Strickland* analysis of Miller's IAC claims.

Miller also complains of instances where the OCCA found counsel's performance deficient, reasoning that the OCCA's determination means his IAC claims must have merit. *See* COA Appl. at 7. But a reviewing court may reject a *Strickland* claim if a petitioner "makes an insufficient showing" on *either* prong. *See Strickland*, 466 U.S. at

6

697. The district court explained (and Miller does not contest) that the OCCA determined concerning each IAC claim either that counsel did not perform ineffectively, or that Miller failed to show prejudice, or both. Thus, the OCCA's finding of deficient performance does not make his claims debatable. Miller has failed to show his entitlement to a COA on this claim.

C. Prosecutorial Misconduct

Miller claims pervasive prosecutorial misconduct tainted his trial. To obtain federal habeas relief on this claim, he must show that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Miller identifies three specific instances of alleged misconduct. First, he complains the prosecutor "knowingly sought capital punishment for a case in which he had previously [been] acquitted by a jury." COA Appl. at 8. Particularly in view of the reversal of his capital sentence, he fails to explain how this alleged violation made his trial or current sentence unlawful.

Second, he argues the prosecutor knowingly suborned and presented perjured or false testimony from witnesses Sundeep Patel and Phyllis Miller. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) (prohibiting prosecutor from knowingly presenting material, perjured testimony). Patel, a hotel desk clerk, presented testimony that helped establish that Miller and his accomplice John Hanson drove Bowles's stolen car to the Oasis Motel on August 31, 1999, the date the prosecution established for the theft of the car and the

7

murders of Bowles and Thurman. Police later recovered the broken-down car from the motel parking lot and found both men's fingerprints inside it.

Patel testified that Hanson was accompanied by a second black man on August 31. Although Patel got a good look at Hanson at the hotel when Hanson checked in, and confirmed Hanson's identity using his driver's license, he did not interact with or focus on the second man with him. He also testified at trial that he "couldn't really see" the second man, noting that a poster board on the left side of the plexiglass service window where he sat blocked his view. R., Vol. 3 at 880.

Miller's counsel vigorously cross-examined Patel, attempting to establish that Patel saw the second man and provided a description of him that did not fit Miller. He presented Patel with a statement Patel originally gave to Tulsa police, stating that the second man probably weighed about 250 pounds. (Miller weighed approximately 180 pounds at the time.) Patel acknowledged that when speaking to a detective soon after the events in question he was able to provide estimates of the second man's height, weight, general build, and age. Counsel also used Patel's earlier statements to attack his testimony that his ability to see the second man was blocked by a poster board. The OCCA reviewed the evidence and concluded that in fact "Patel would have been able to see anyone in the hotel's tiny lobby—if he had wanted to and was paying attention." *Miller II*, 313 P.3d 944.

8

Miller argues that the prosecution knowingly presented false testimony from Patel that his view was blocked and he was unable to see the second man.[1]  The OCCA determined that Miller failed to establish that Patel's testimony—though perhaps of limited value—was "'false' or that the prosecutor committed misconduct in presenting [it]." *Miller II*, 313 P.3d at 978.  It further determined that use of Patel's testimony had not made Miller's trial fundamentally unfair.

As for Phyllis Miller, the OCCA determined that Miller "failed to present any evidence that the prosecutor's statements—that the State had not made any 'deal' with Phyllis and that the state had not promised her anything in exchange for her testimony— were false or misleading." *Id.*; *see Giglio v. United States*, 405 U.S. 150, 153-54 (1972) (prohibiting prosecutor from suppressing material evidence favorable to the defense). The district court determined these conclusions did not represent unreasonable factual determinations or an unreasonable application of clearly established federal law.  Miller fails to show the district court's determinations concerning Patel's and Phyllis Miller's testimony are debatable.

---

[1] Patel also stated he saw the second man seated in the passenger seat of Bowles' car.  Miller now argues this testimony also was false testimony knowingly offered by the prosecution that differed from Patel's earlier statements.  *See* COA Appl. at 9-10.  He fails to establish he made this argument to the OCCA.  *See* R., Vol. 1 at 552-53.  Nor did the district court appear to recognize a discrete argument on this point, though Miller arguably presented it in his habeas reply brief.  *See id.*, Vol. 5 at 77-78.  To the extent Miller is attempting to assert a separate, unexhausted claim or sub-claim, he has failed to show his entitlement to a COA.  *See Milton v. Miller*, 812 F.3d 1252, 1265-66 (10th Cir. 2016).

9

Finally, Miller complains that the prosecutor made comments to the jury that diminished the presumption of innocence. To determine whether a prosecutor's comments resulted in a fundamentally unfair trial a court should first decide whether the prosecutor's comments were improper. *See United States v. Christy*, 916 F.3d 814, 824 (10th Cir. 2019). If so, it should examine the likely effect of the comments on the jury's verdict. *See id.*

In concluding that these comments, though improper, did not make Miller's trial fundamentally unfair, the OCCA emphasized "that the prosecutor's remarks were not objected to by defense counsel, that they were isolated and not emphasized at Miller's retrial, and . . . Miller's jury was clearly and properly instructed regarding the presumption of innocence." *Miller II*, 313 P.3d at 977. The OCCA also noted that "the evidence of guilt in [Miller's] case was very convincing." *Id.* [2]

---

[2] In *Mahorney v. Wallman*, 917 F.2d 469 (10th Cir. 1990) (per curiam) we determined the petitioner was not required to meet the *Donnelly* standard because the prosecutor's comments diminishing the presumption of innocence had "effectively deprived [him] of a specific constitutional right," thus permitting "a habeas claim [to] be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Id.* at 472; *see generally Littlejohn v. Trammell*, 704 F.3d 817, 837 (10th Cir. 2013) (explaining prosecutorial misconduct may result in constitutional error by denying a specific right). Our holding in *Mahorney* does not require a different result here. Miller argues for application of the *Donnelly* standard and does not develop an argument under *Mahorney* or related cases. *See* COA Appl. at 7-8. To prevail on a claim that the prosecutor violated a specific constitutional right Miller would be required to show the prosecutor's comments "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted); *see Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009) (stating *Brecht* standard applies to claims involving alleged violations of specific constitutional rights). The OCCA concluded to the extent that the prosecutor's argument diminishing the presumption of innocence "implicated . . . specific constitutional rights" Miller was not entitled to relief because the prosecutor's argument

The district court concluded that the OCCA's application of the *Donnelly* framework was not unreasonable, stating it "agree[d] with the OCCA's determination that [Miller] was not deprived of a fair trial." R., Vol. 5 at 147-48. Because Miller fails to show that reasonable jurists would debate the district court's resolution of his prosecutorial misconduct claim, we deny a COA.

D. Perjured Testimony

Miller reiterates his claims that the prosecutor knowingly used perjured testimony from Sundeep Patel and Phyllis Miller. For the reasons already stated, he is not entitled to a COA concerning these claims.

E. Interstate Agreement on Detainers

Miller asserts the Oklahoma trial court lacked jurisdiction over his case because the state of Oklahoma violated Article IV of the Interstate Agreement on Detainers (IAD). The IAD, to which the United States and Oklahoma are signatories, protects a prisoner from excessive transfers through its anti-shuttling provision. *See* IAD § 2, art. IV(e). This provision is violated when a prisoner serving a sentence in a sending state is indicted by a receiving state; is transferred to the receiving state pursuant to a detainer and a request for custody; and is then returned to his original place of imprisonment before being tried on the untried indictment. *See id.*; *see also United States v. Pursley*, 474 F.3d 757, 762 (10th Cir. 2007).

---

was "harmless beyond a reasonable doubt." *Miller II*, 313 P.3d at 977. Miller has failed to demonstrate a debatable issue under the *Brecht* standard.

At the time of his 2002 state-court murder trial, Miller was serving a federal sentence of life plus 157 years' imprisonment at the United States prison in Leavenworth, Kansas. After his 2002 conviction and sentencing for the murders he was returned to Leavenworth. The Tulsa County Sheriff's Office placed a detainer so that when he finished his federal sentence he would be returned to Oklahoma for execution of the state sentences. But in 2004 his state conviction was reversed and remanded for a new trial. Miller argues this converted his detainer into an IAD "detainer" for untried charges.

In November 2004, the Tulsa County District Attorney's Office obtained a writ of habeas corpus ad prosequendum requiring the Federal Bureau of Prisons to return Miller to Oklahoma for retrial. The BOP then removed the previously placed detainer at the request of the Tulsa County Sheriff's Office and Miller was returned to Tulsa County. In March 2006 he waived his right to speedy trial to accommodate his request for an eight-month continuance. He was then returned to federal custody during the eight months to await his state-court jury trial.

Prior to his 2008 retrial, Miller sought dismissal of the Oklahoma charges against him from the Oklahoma courts for violation of the anti-shuttling provision. The OCCA denied a writ of prohibition, concluding (1) the detainer placed on Miller after his 2002 state conviction was not based on untried charges and was therefore not subject to the IAD; (2) the detainer was removed after his conviction was reversed and remanded for a new trial; and (3) the writ of habeas corpus ad prosequendum was not a "detainer" for purposes of the IAD.

12

The district court agreed with the OCCA's conclusion that Miller failed to establish that the IAD was triggered or violated in his case. But it also determined that habeas relief should be denied because Miller had "fail[ed] to identify any 'special circumstances' that would render the alleged IAD violation subject to collateral attack or federal habeas relief." R., Vol. 5 at 157. A violation of the IAD, which creates a statutory right, only advances a claim for habeas relief where "special circumstances" are present that also resulted in a violation of a constitutional right. *See Knox v. Wyo. Dep't of Corrs.*, 34 F.3d 964, 967 (10th Cir. 1994). Even if Miller's assertion that the IAD was violated is debatable, he fails to challenge this alternative basis for the denial of federal habeas relief. We are unable to discern any constitutional right that the alleged IAD violation might have denied Miller in this case. He has failed to show his entitlement to a COA concerning this claim.

F. Lesser-Included Offense Instruction

Miller sought a jury instruction on the lesser included offense of accessory after the fact to first-degree murder. The OCCA found the trial court properly declined to instruct the jury concerning this lesser-included offense. Although acknowledging that Miller's testimony about wiping down Bowles's car at Hanson's request could support a conviction for accessory after the fact to *theft of the car*, the OCCA reasoned the evidence did not support a theory that Miller had no involvement in the murders but had wiped down the car at Hanson's request, with the intent to help "Hanson 'avoid or escape from arrest, trial, conviction, or punishment'" for the murders. *Miller II*, 313 P.3d at 981 (quoting Okla. Stat. tit. 21, § 173).

The district court reasoned Miller was not entitled to federal habeas relief on this claim, for several reasons. First, his argument that the OCCA had disregarded state law in reaching its decision did not state a federal constitutional claim. Second, his claim ran afoul of the Tenth Circuit's "rule of automatic non-reviewability for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." R., Vol. 5 at 133 (internal quotation marks omitted). Third, he had failed to present his constitutional claim in state court, and the OCCA would likely impose a procedural bar if he now attempted to do so. Finally, the OCCA's determination that the evidence did not warrant the instruction was neither contrary to nor an unreasonable application of clearly established federal law and was based on a reasonable determination of the facts.

Miller has failed to show the district court's resolution of this claim is debatable. He argues that he was entitled to a lesser-included offense instruction even if he asserted his innocence. Although the OCCA mentioned that Miller's defense at trial relied on total innocence of the murders, it determined there was no *evidence* to support instructing the jury that Miller wiped down the car with the intent to protect Hanson from a first-degree murder charge. *See Miller II*, 313 P.3d at 981. This determination did not represent an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

In addition, "[t]he Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, and neither has this court." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (citing *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980)). Indeed, "[o]ur precedents establish a rule of 'automatic

14

non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Id.* (citing *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)).

This case originally was tried as a capital case. But as we have noted both of Miller's capital sentences were vacated or modified and he is no longer subject to capital punishment as the result of either of his convictions. Thus he cannot point to a capital sentence to which he is subject that was imposed on him without permitting the jury to consider a lesser offense carrying a lesser punishment. *Cf. Trujillo v. Sullivan*, 815 F.2d 597, 602 (10th Cir. 1987) ("Analytically, the capital case in which the death penalty is not ultimately imposed appears to be more like the noncapital case than the death sentence case" for purposes of the rule in *Beck*. Such a case "belongs with noncapital cases . . . because . . . the death penalty was not in fact imposed."). Miller fails to show the Supreme Court's holding in *Beck* debatably applies to his case. We therefore deny his request for a COA.

### G. Cumulative Error

Miller argues the district court erred in failing to "aggregate all errors found to be harmless or otherwise and apply the cumulative error analysis as required by established law." COA Appl. at 16. He did not raise a cumulative-error claim in his habeas petition. The claim is therefore waived for purposes of our review. *See Grant v. Royal*, 886 F.3d 874, 909 (10th Cir. 2018) (arguments omitted from habeas petition are not preserved for appellate review); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000) (applying waiver analysis to cumulative-error claim not asserted in habeas petition).

15

VI.

We deny Miller's request for a COA and dismiss this matter. We grant Miller's motion for leave to proceed in forma pauperis on appeal.

Entered for the Court


Joel M. Carson III
Circuit Judge

16