FILED
United States Court of Appeals
Tenth Circuit

June 14, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN WILLIAM CHILDERS,

    Petitioner - Appellant,

v.

SCOTT CROW, Director,

    Respondent - Appellee.

No. 20-5014

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:17-CV-00416-GKF-JFJ)**
_____

Howard A. Pincus, Assistant Federal Public Defender, Office of the Federal Public Defender, Denver, Colorado (Virginia L. Grady, Federal Public Defender, Office of the Federal Public Defender, Denver, Colorado, with him on the briefs), appearing for Appellant.

Joshua R. Fanelli, Assistant Attorney General, Office of the Attorney General for the State of Oklahoma, Oklahoma City, Oklahoma (Mike Hunter, Attorney General of Oklahoma, with him on the briefs), appearing for Appellee.
_____

Before **MORITZ**, **SEYMOUR**, and **BRISCOE**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

    Petitioner-Appellant John William Childers, who is incarcerated in Oklahoma,

appeals the district court's denial of his pro se 28 U.S.C. § 2254 petition for a writ of

habeas corpus. Childers was convicted of violating two provisions of Oklahoma's Sex Offenders Registration Act (SORA) for living within 2,000 feet of a school and for failing to update his address. He is serving two consecutive life sentences for these convictions. After seeking post-conviction relief in state court, Childers sought federal habeas relief, arguing, among other things, that his life sentences were the result of an impermissible retroactive application of SORA's provisions in violation of the ex post facto clause of the Oklahoma Constitution. The district court determined that Childers's § 2254 petition was time-barred and denied relief. This court, however, granted a Certificate of Appealability (COA), concluding that "[r]easonable jurists could debate whether . . . Childers has advanced a colorable claim of actual innocence" to overcome the time-bar. COA at 6.

We conclude the district court's procedural ruling was correct and that Childers did not raise a claim of actual innocence before the district court or in his application for a COA. Accordingly, we disagree that a COA should have been granted. Even were this not the case, as explained further below, Childers's ex post facto arguments on appeal have changed substantially from those he presented in his COA application. We therefore decline to consider Childers's new arguments because they exceed the scope of the COA. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we vacate the COA and dismiss this matter.

**I**

In 1998, John William Childers was charged with three sex offenses that he committed in 1992 in Delaware County, Oklahoma. He pleaded guilty on March 23,

2

1999. In exchange for his guilty plea, Childers agreed to three consecutive 10-year prison sentences. But he was released on March 29, 2005 with the balance of his sentence to be served on probation.

Shortly after his release in March 2005, Childers registered under Oklahoma's Sex Offenders Registration Act (SORA), Okla. Stat. tit. 57, § 583(A). At that time, SORA prohibited sex offenders from living within 2,000 feet of a school, *id.* § 590, and required them to notify the Department of Corrections and local law enforcement if they changed addresses, *id.* § 584(D) (2004). In September and October 2007, Childers was charged with violating both § 590 and § 584(D), respectively, under the 2006 version of those provisions. Childers entered a blind guilty plea to both offenses on September 8, 2009. Because both offenses occurred after former convictions for two or more felonies, Childers was sentenced to life in prison on each conviction, with the sentences to run consecutively.

Childers subsequently filed a motion to withdraw his guilty plea, which the Delaware County District Court denied. On direct appeal, Childers alleged ineffective assistance of counsel, that his sentences were excessive, and that his plea was not knowing and voluntary. The Oklahoma Court of Criminal Appeals (OCCA) denied the petition for a writ of certiorari on September 23, 2010. Childers did not appeal this decision to the United States Supreme Court and so his conviction became final ninety days later on December 23, 2010, when the period to seek certiorari review expired.

On December 16, 2011, Childers filed his first application for post-conviction relief in state court. Childers raised several claims related to the factual basis for his guilty plea, double jeopardy, alleged conflicts of interest, and ineffective assistance of counsel. On June 17, 2013, the state court denied the application in a one-sentence order.

On July 29, 2013 Childers filed a second application for post-conviction relief in state court. This second application consisted entirely of a request for permission to file an unspecified document out of time due to a mailing error. The state court denied that application on March 20, 2014.

On August 15, 2014, Childers filed a third application for post-conviction relief in state court. In this application, Childers raised four claims: (1) that he did not have as many prior convictions as the state claimed and his life sentences were therefore improperly enhanced; (2) that his life sentences rested on an unconstitutional retroactive application of SORA; (3) that his guilty plea was not knowing and voluntary; and (4) that he received ineffective assistance of counsel. For his second claim (the only claim that remains in this appeal), Childers cited the Oklahoma Supreme Court's decisions in *Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004 (Okla. 2013), and *Cerniglia v. Okla. Dep't of Corr.*, 349 P.3d 542 (Okla. 2013), which together held that a retroactive application of SORA violated the ex post facto clause of the Oklahoma Constitution, and therefore the applicable version of SORA is the one in effect when a person is convicted of the underlying sex offense and becomes subject to SORA's provisions. Under these cases, Childers argued that the

4

version of SORA that was in effect at the time of his conviction in 1999 sharply limited the maximum penalty to one year in prison for living within 2,000 feet of a school in violation of § 590 and five years in prison for failure to update an address in violation of § 584(D). Importantly, Childers's ex post facto argument did not directly attack his SORA convictions; he only argued that his life sentences were based on an unconstitutional retroactive application of SORA.[1]

On September 22, 2016, the state court denied Childers's application because his claim that he did not have as many prior convictions as the state alleged had already been raised in his first application for post-conviction relief. Childers appealed and the OCCA affirmed on December 14, 2016. The OCCA summarized the application as only raising three, not four, claims: "that his sentences were

---

[1] We are not alone in recognizing this fact. Childers's appellate counsel explicitly stated in supplemental briefing that Childers's ex post facto arguments in the Oklahoma state courts and federal district court were focused on his sentences, not his convictions. Aplt. Supp. Opening Br. at 12 ("Mr. Childers' argument based on the ex post facto decisions of the Oklahoma courts was therefore directed against his sentence . . . ."); *id.* at 29 ("He therefore trained his attack not on his conviction, but on his life sentence . . . ."); *id.* at 58 (noting that the COA liberally construed an actual innocence claim "despite the fact that the petition claimed his sentences were illegal, and not that his convictions were"). The Oklahoma Attorney General, representing the respondent, agreed with Childers's counsel on this point. Aple. Br. at 12 n.5 (noting that in his § 2254 petition, "Petitioner attacked the length of his sentences based on an application of the ex post facto clause, contending that his term of incarceration was impermissibly enhanced"). This position on appeal tracks the Oklahoma Attorney General's position in the district court. The Oklahoma Attorney General's reference to Childers's convictions was not a recognition of his ex post facto challenges or a claim of actual innocence, as the dissent suggests. *See* Dissent at 1, 5. Rather, the Oklahoma Attorney General's response brief said only that it would briefly summarize "[t]he history of [Childers's] filings challenging his convictions" in state court. ROA at 42.

wrongfully enhanced, [that] his pleas were not knowingly or intelligently made, and that counsel was ineffective." ROA at 153. The OCCA held that "[t]he issues of ineffective assistance of counsel and that his pleas were not knowing or voluntary were raised on direct appeal," and "the issue of improper enhancement was raised in [the] first post-conviction application." *Id.* at 154. "These issues are, therefore, barred by the doctrine of *res judicata*." *Id.* The OCCA did not specifically address Childers's ex post facto argument but held that "all issues not raised in the direct appeal, which could have been raised, are waived." *Id.*

## II

On July 4, 2017, Childers filed the § 2254 petition that is the subject of this appeal in the United States District Court for the Northern District of Oklahoma. He raised four claims: (1) his sentence constituted unconstitutional ex post facto punishment; (2) his sentence was contrary to a provision of Oklahoma law that governs multiple punishments for the same crime, Okla. Stat. tit. 21, § 11; (3) his guilty plea was not knowing or intelligent due to ineffective assistance of counsel; and (4) the Oklahoma courts had violated state law by making inadequate findings of fact with respect to his post-conviction motions. With respect to timeliness, Childers stated that he filed his § 2254 petition within one year of the Oklahoma courts resolving his most recent post-conviction application.

The district court dismissed Childers's petition as untimely under the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d). Specifically, the district court found that Childers's conviction

became final on December 23, 2010 after he failed to appeal the OCCA's decision, and that although Childers's first application for post-conviction relief in state court on December 16, 2011 tolled the one-year period to seek federal habeas relief, the clock re-started on July 18, 2013 (the day after the appeal period for Childers's first petition expired) and the window to file a federal habeas petition closed seven days later on July 25, 2013. The district court concluded that Childers's July 2017 petition was filed "well after the [§ 2254] deadline." ROA at 167.

The district court rejected Childers's argument that the statute of limitations began to run when the Oklahoma Supreme Court issued its decisions in *Starkey* and *Cerniglia*, because "only United States Supreme Court rulings can trigger the commencement of a new one-year period under 28 U.S.C. § 2244(d)(1)(C)." *Id.* at 168. The district court did not address any allegations of cause, prejudice, or actual innocence to overcome the time-bar because Childers did not raise any such claims.[2]

---

[2] The dissent asserts that the district court understood Childers's § 2254 petition as challenging his conviction on ex post facto grounds, pointing to two statements made by the district court. Dissent at 6; ROA at 164 ("Childers challenges his convictions for failing to update his address as a sex offender and living within 2000 feet of a school."); *id.* at 166 ("Childers contends his conviction and sentence are unconstitutional based on: (Ground 1) ex-post-facto violations; (Ground 2) sentencing errors; and (Ground 3) ineffective assistance of counsel."). Because (as explained before and more below) Childers's ex post facto arguments targeted only his sentences, we believe that the district court's statements regarding the convictions were likely referring to the ineffective assistance of counsel claim. At any rate, if the district court understood Childers's petition as raising a claim of innocence, as the dissent contends, it is hard to see why it would not then evaluate such a claim. Rather than committing reversible error in ignoring a claim it understood to be raised in the habeas petition, it is more likely that the district court did not understand Childers's petition as raising a claim of innocence.

7

Childers sought, and we granted, a COA. Although the order granting the COA concluded that "[r]easonable jurists could not debate whether . . . Childers'[s] § 2254 [petition] was timely," COA at 5, it determined that "[r]easonable jurists could debate whether . . . Childers has advanced a colorable claim of actual innocence" to overcome the time-bar. *Id.* at 6. The COA acknowledged that this was a liberal construction of Childers's pro se application for a COA since he "did not use the phrase 'actual innocence' in his application." *Id.* at 6 n.3. Nevertheless, in the COA's view, "his ex post facto argument necessarily implicates his guilt." *Id.* The COA explained that if Childers proved his allegations that "his conviction under a later version of SORA was an application of an ex post facto law that violated the Oklahoma Constitution," then "he will have shown he was convicted of an act that was not criminal under Oklahoma law." *Id.* at 7. "In other words, he will have demonstrated actual innocence," providing a gateway to address the merits of his claim. *Id.*

### III

"For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our independent judgment and review the federal district court's conclusions of law de novo." *Hooks v. Workman*, 689 F.3d 1148, 1163–64 (10th Cir. 2012) (internal quotations omitted).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable

8

whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). AEDPA "mandates that *both* showings be made before [we] may entertain the appeal." *Slack*, 592 U.S. at 485 (emphasis added).

As noted in the COA, Childers's habeas petition is unquestionably time-barred. Because reasonable jurists could not debate the district court's procedural ruling, the COA should have ended its analysis there. To be sure, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Childers did not, however, raise a claim of actual innocence before the district court or in his application for a COA. A COA was nevertheless granted, after liberally construing Childers's application for a COA as raising such a claim.

After our grant of a COA, Childers understandably asserted for the first time a gateway actual innocence claim and also asserted for the first time in these proceedings ex post facto challenges to his convictions.[3] But we must still "adhere to

---

[3] The dissent believes that Childers has challenged his convictions all along. But despite the few words and phrases picked from Childers's § 2254 petition and reply brief, we believe the focus of his challenge before the district court was to his life sentences, not his convictions. *See Eizember v. Trammell*, 803 F.3d 1129, 1141 (10th Cir. 2015) ("[T]his court has repeatedly instructed that stray sentences . . . are insufficient to present an argument . . . in a way that might fairly inform opposing counsel or a court of its presence in the case."). Indeed, when read in context, the phrases the dissent cites on pages 3 and 4 clearly refer only to his sentences. *See*

9

our general rule against considering issues for the first time on appeal." *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012). This is the case "[e]ven for actual-innocence claims." *Kenneth v. Martinez*, 771 F. App'x 862, 865 (10th Cir. 2019) (unpublished); *see also Ramirez v. Allbaugh*, 771 F. App'x 458, 462 n.3 (10th Cir. 2019) (unpublished) (deciding a petitioner's actual innocence claim was waived on appeal "because [he] never addressed it in the district court"); *United States v. Moncada*, 714 F. App'x 912, 913 (10th Cir. 2018) (unpublished) ("It does not appear that Moncada argued actual innocence below . . . and therefore he has waived the

---

ROA at 11 (arguing that the Oklahoma state courts have ignored the ex post facto "enhancement of [his] sentences" under *Starkey* and *Cerniglia*, and that "[t]his avoidance . . . clearly shows [him] to be illegally incarcerated"); *id.* at 12 (arguing that "[h]is sentences are unconstitutional" and a "proper modification of his sentences" would result in his "immediate[] release[] from imprisonment"); *id.* at 15 (alleging that he should not be in prison because "he has satisfied his sentences in full," and so "he is being illegally restrained"); *id.* at 28 (explaining that limitations period should not apply because his "sentence was wrongfully enhanced at the time of his conviction," meaning he is "illegally restrained of liberty"); *id.* at 156 ("[H]is sentence is unconstitutional, a violation of ex-post facto clause . . . . And, as such his sentence is therefore void. He has served the maximum sentence the State law allows for."); *id.* at 157 ("Petitioner is now in prison on a sentence that does not exist."); *id.* at 160 (arguing that he is "unlawfully restrained" because "he is being kept in prison on an unlawful life sentence" when "he should not be serving more than ten (10) years").

And even if the dissent's quoted phrases can be read to refer to Childers's convictions, the dissent fails to offer any explanation as to how Childers's petition challenged his convictions on the same ex post facto grounds that he raises on appeal—that his registration period had expired or that § 590 of SORA did not exist when he committed his underlying crimes. If we were to say that the petition's stray references to "convictions" encompassed these arguments, we would be making Childers's arguments for him. Although we must construe pro se pleadings liberally, "this rule of liberal construction stops . . . at the point at which we begin to serve as [an] advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

10

issue on appeal." (citation omitted)).[4] Although Childers's pro se petition before the district court is entitled to a liberal construction, we "may not rewrite a petition to include claims that were never presented." *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (internal quotations omitted).

Even after applying a liberal construction to Childers's § 2254 petition, we conclude that Childers did not present a claim of actual innocence to the district court. As stated above, the COA "liberally construe[d] . . . Childers's application for a COA as raising an actual innocence claim." COA at 6 n.3 (quotations omitted). But regardless of how one construes Childers's application for a COA, Childers did not raise a claim of actual innocence in his § 2254 petition before the district court, which is the relevant pleading for determining whether Childers has preserved a claim for our review. In *Stouffer v. Trammell*, 738 F.3d 1205, 1221 n.13 (10th Cir. 2013), we declined to consider an argument because it was "not raised before the district court as part of the habeas petition." We reached the same conclusion in *Owens v. Trammell*, 792 F.3d 1234, 1246 (10th Cir. 2015) ("Because the argument was not raised in his habeas petition, it is waived on appeal."). And in a case with similar circumstances, we rejected a habeas petitioner's argument "that although he may not have . . . used the term 'actual innocence'" in his petition before the district

---

[4] Although these cases are unpublished and therefore not binding, 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1, it is important to note that cases like Childers's—where a habeas petitioner has waived a claim—usually arise in the disposition of a denial of a COA and, accordingly, are frequently unpublished.

11

court, he could still make the claim on appeal because he had generally asserted his innocence. *Heath v. Soares*, 49 F. App'x 818, 821 (10th Cir. 2002) (unpublished) ("Heath did not assert actual innocence at critical stages in the proceedings, and as a general rule we will not consider a claim that was waived or abandoned in the district court."). Childers's § 2254 petition challenged only the constitutionality of his sentences under the Oklahoma ex post facto clause; his petition did not assert actual innocence or claim that his convictions were invalid. Accordingly, Childers waived his claim of actual innocence by failing to raise it before the district court and we decline to consider it.[5]

Because the district court's procedural ruling was correct and Childers did not raise a claim of actual innocence in his habeas petition,[6] we conclude that a COA

---

[5] The dissent asserts that we reach this conclusion simply because Childers never invoked the words "actual innocence." But as explained before, we believe— like Childers's counsel—that Childers's § 2254 petition challenged his sentences, not his convictions. *Supra* at 5 n.1. And a challenge to a life sentence does not implicate innocence. Additionally, even assuming Childers did clearly challenge his conviction, we disagree with the dissent that this necessarily raises an actual innocence claim. *See* Dissent at 18 ("Conviction and innocence are on the opposite sides of the coin . . . ."). Habeas petitioners can challenge their convictions for any number of reasons that do not implicate innocence: improper jury instructions, *Batson* violations, or ineffective assistance of counsel, to name a few.

[6] The dissent faults the district court for failing to liberally construe Childers's petition as implicating the "familiar" actual innocence framework from *Bousley v. United States*, 523 US. 614, 622 (1998), where an intervening change in the law supports a petitioner's argument that he was convicted of an act that the law does not make criminal. *See* Dissent at 18–19. Assuming without deciding that *Bousley* allows such a claim (an issue in dispute in this case), the Supreme Court has indicated that the typical actual innocence claim is one where a petitioner presents new evidence that he did not commit the criminal conduct he was convicted of committing. *See* *McQuiggin*, 569 U.S. at 394–95 ("The miscarriage of justice exception . . . applies to

should not have been granted. *Holcomb v. Whitten*, 836 F. App'x 682, 689 (10th Cir. 2020) (unpublished) (partially vacating COA on procedurally defaulted claim and declining to consider assertion of actual innocence because "Holcomb never asked the district court to conduct an actual-innocence inquiry"); *Hughes v. Beck*, 161 F. App'x 797, 799 (10th Cir. 2006) (unpublished) ("Hughes's ineffective assistance of counsel argument before the district court plainly does not include a claim that his counsel had a conflict of interest. Accordingly, that claim has been waived and COA should not have been granted.").

Even were this not the case, Childers faces an additional hurdle that precludes our review: the ex post facto claims he now presents differ substantially from the claim granted in the COA. Childers concedes as much in his supplemental opening brief. Specifically, he acknowledges that the COA liberally interpreted his registration-period claim as arguing that "under the 1998 version of SORA" in place at the time of his convictions, "his registration period would have expired in 2008." Aplt. Supp. Opening Br. at 9–10. As it turns out, that claim would not have been

a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 537 (2006) (explaining that a gateway actual innocence claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" (quoting *Schlup*, 513 U.S. at 324)). To be clear, this is not to say that a *Bousley*-type claim of actual innocence can *never* be brought. But as a court of review, we cannot fault the district court for not construing Childers's habeas petition as raising such a claim of actual innocence that did not fully develop until after our grant of a COA. *Eizember*, 803 F.3d at 1141 ("[W]e simply cannot fault the district court for failing to see what wasn't there.").

13

successful because (as Childers again acknowledges) "the registration period . . . does not begin to run until release from prison," so the ten-year period contemplated by the COA would still have been in effect when his violations occurred. *Id.* at 10–11. Faced with that reality, Childers's supplemental brief pivots to two new claims he describes as "related to, but not precisely the same in their details, [as] the challenge to [Childers's] convictions that the COA . . . outlines." *Id.* at 10.

But the details changed significantly. Childers added an entirely new claim—nowhere mentioned in the COA application or the COA itself—that the residency prohibition in § 590 does not apply to him at all under Oklahoma ex post facto law. And on the registration-period claim, Childers changed his argument for why he had no duty to register. In the application for a COA, he argued that a ten-year registration period running from 1998 to 2008 had expired; in the supplemental brief, he argued instead that a two-year registration period running from 2005 to 2007, applicable under the version of SORA in effect when he committed his underlying crimes, had expired. Recognizing the difference between the two theories, Childers's supplemental *reply* brief—not his supplemental opening brief, as the dissent contends—asks for the first time that we "expand the COA to include the claims made in the supplemental brief[]." Reply Br. at 25.

We decline to do so. Childers's new claims go "beyond the scope of [the] COA." *Eaton v. Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019) (declining to

14

consider *Brady* claim[7] attacking conviction because district court only granted COA on such claim as it related to his sentence), *cert. denied*, 140 S. Ct. 2771 (2020). Notably, the petitioner in *Eaton* had at least raised his alternative *Brady* claim in the district court, even though the district court did not grant a COA on that claim. Here, Childers clearly did not raise his alternative (and quite distinct) ex post facto arguments in the district court and should not be permitted to do so at this stage of the proceedings.[8] Even accepting that Childers did raise *some* version of an ex post facto argument in the district court, we also do not consider arguments "where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented below." *Owens*, 792 F.3d at 1246 (alterations and internal quotations omitted); *see also Milton v. Miller*, 812 F.3d 1252, 1264 (10th Cir. 2016) ("[Petitioner] cannot allege an ineffective-assistance claim and then usher in anything fitting under that broad category as the same claim.").

---

[7] "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[8] The dissent contends that we can simply remand to the district court to consider these new claims. But the dissent does not explain how we would have jurisdiction to do this without expanding the COA, which we decline to do. *See Stouffer*, 738 F.3d at 1222 (declining to consider a restyled claim—and not mentioning the possibility of a remand to the district court—because "(1) it was not raised before the district court as part of the habeas petition, and (2) no COA has been granted on the new claim" (citations omitted)).

Acknowledging these issues, Childers contends that his claims of actual innocence should overcome any federal waiver rules: "If actual innocence is sufficient to overcome procedural rules that protect the weighty state interests implicated by federal habeas review, it is necessarily sufficient to overcome the interests served by a federal procedural rule." Aplt. Supp. Opening Br. at 60. In his view, "[t]he concerns of comity and federalism are entirely absent in the context of any default or waiver that would result from the failure to include an argument in a federal habeas petition, and any federal finality interest is weaker than the state interest in finality that attaches to its criminal judgment." *Id.* But Childers provides no direct authority for this contention and we can find none. Additionally, and perhaps more importantly, accepting Childers's argument would run counter to our role as "a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 719 n.4 (2005). Accordingly, we reject his contention.

In short, the district court's procedural ruling on the timeliness of Childers's petition was correct and because Childers did not raise a claim of actual innocence before the district court, we conclude that a COA should not have been granted. Even were this not the case, we would not expand the COA's scope to encompass Childers's new ex post facto arguments.

## IV

For those reasons, we VACATE the COA and DISMISS this matter.

16

*Childers v. Crow*, 20-5014
**SEYMOUR**, J., dissenting.

The district court, a tenth circuit judge, and the Oklahoma Attorney General all understood John Childers' ex post facto arguments as challenging his convictions. As set forth *infra*, the district court said Mr. Childers' § 2254 petition "challenges his *convictions*" under later versions of Oklahoma's Sex Offenders Registration Act (SORA). Likewise, our colleague, Judge Carolyn McHugh, granted a certificate of appealability (COA) because Mr. Childers had challenged "his *conviction* under a later version of SORA." The respondent also understood that Mr. Childers had "claimed that his *convictions* violated the ex post facto clause of the Oklahoma Constitution."

Against this background, the majority's insistence that Mr. Childers only challenged his sentence but "did not assert actual innocence or claim that his convictions were invalid" is puzzling. *See* Opinion at 12. If that interpretation is correct, why did Mr. Childers call his convictions "improper[]," ROA at 156, and "wrongful," Aplt. Br. at 9? Why did he ask the district court to revoke both his "judgment *and* sentence" if he was challenging only the latter? ROA at 12. And how does that interpretation reconcile with that of the district court, the COA order, or the respondent? If the majority has answers, its opinion certainly does not let on. Yet, the majority is so confident of its understanding that it is willing to shut the doors of justice on Mr. Childers' seemingly convincing claim of innocence without a second thought.

Because I join those who have interpreted Mr. Childers' ex post facto arguments as challenging his convictions, I respectfully dissent.

**I.**

John William Childers pled guilty in March of 1999 to committing certain sex offenses in 1992 in Oklahoma. The state court sentenced him to two suspended, and one unsuspended, terms of ten years. He was released in March of 2005 on probation and registered under SORA shortly thereafter.

In 2007, Mr. Childers was charged in Delaware County, Oklahoma for two separate violations of SORA: in September for being a sex offender living within 2,000 feet of a school in violation of Okla. Stat. tit. 57, § 590 and in October for failing to notify the state as to his change of address in violation of Okla. Stat. tit. 57, § 584(D). On September 8, 2009, he pled guilty to both and, because of his prior convictions, he was sentenced to two consecutive life imprisonments, which he is serving at a private prison. He was convicted under versions of SORA that were not in effect at the time of his 1999 conviction.

In 2013, the Oklahoma Supreme Court considered an issue at the heart of Mr. Childers' 2009 convictions: whether the state can retroactively apply a later version of SORA to a person convicted before that version went into effect. *Starkey v. Oklahoma Department of Corrections*, 305 P.3d 1004 (Okla. 2013). The court said no, holding that the retroactive application of SORA violates the ex post facto clause of Article 2, § 15 of the Oklahoma Constitution. *Id.* at 1130. Then, in *Cerniglia v. Oklahoma Department of Corrections*, 349 P.3d 542, 544 (Okla. 2013), the court made clear that persons like Mr. Childers are subject only to the version of SORA in effect at the time of their predicate conviction:

The lesson to be found in *Starkey* is that the applicable version of SORA is the one in effect when a person becomes subject to its provisions. A person convicted in another jurisdiction is not subject to SORA until they enter Oklahoma with the intent to be in the state. Whereas, a person like Cerniglia, who was convicted in Oklahoma, became subject to SORA when she was convicted.

After failing in his pursuit of several appeals and post-conviction challenges, Mr. Childers filed a pro se § 2254 petition on July 14, 2017. He claimed (1) his 2009 convictions and sentences violated the ex post facto clause of the Oklahoma Constitution; (2) his sentences were improperly enhanced; (3) his guilty pleas were not knowingly and intelligently entered as a result of ineffective assistance of counsel; and (4) the state courts improperly denied his post-conviction applications without issuing adequate findings of fact. As relevant here, his petition squarely attacked his 2009 convictions based on retroactive application of SORA: "Petitioner's rights [were] violated by ex-post facto application of laws not in effect at the time of his conviction." ROA at 8.

Despite clearly challenging his convictions, however, his attempt to provide "supporting facts" turned messy. For example, despite the instruction to "not argue or cite law," his petition provides plenty of both. It weaves together facts, arguments, and legal theories, often jumping from one claim to another. Also, it uses the "supporting facts" section for "ground one" to introduce his case, *see id.* at 8-9 and uses that section for "ground four" to summarize his arguments on all four grounds, *see id.* at 23-24.

As relevant here, Mr. Childers' petition interweaves ex post facto arguments against both his sentence and his convictions. As a result, his allegations are tangled and difficult to distinguish. For example, the petition sometimes uses phrases like "illegal

3

incarceration" or "unlawfully restrained" without making it clear whether he is attacking his sentence, his convictions, or both,[1] while at other times it clearly challenges both his judgment and his sentence. In short, Mr. Childers' petition does not disguise the fact that he is pro se.

Despite this occasional ambiguity, however, the petition repeatedly attacks the constitutionality of his 2009 convictions. It argues that both Mr. Childers' convictions and his sentence were the result of retroactive application of SORA and thus are unconstitutional under *Starkey* and *Cerniglia*. *See id.* 11-12 (citing to those cases to argue he is "illegally incarcerated against the provisions of law and constitutions of Oklahoma and the United States."); *id.* at 12 ("The holdings of the Court's [sic] have corrected wrongs in the sentencing applied to cases such as petitioner's by making clear the manner new laws are to be applied to previous violations of law, forbidding retroactive punishments to be levied."). The petition explains that in *Starkey* and *Cerniglia* "the Courts recognized the constitutional violation of the individuals inherent rights as a result of a retroactive application of law, and did *modify the convictions* of those individuals to comport with the resolutions reached whereby laws that were enacted after the fact of initial conviction may not be applied." *Id.* at 28 (emphasis added). The petition asks the

---

[1] Although these phrases at first glance appear to challenge only Mr. Childers' prison sentence, it is not difficult to see how they may in fact be an attack on his convictions. For example, a person incarcerated based on what he believes to be an unlawful conviction may complain that he is illegally incarcerated. Just because those terms most directly challenge his status as a prisoner does not mean they do not also attack the conviction that resulted in that illegal incarceration.

4

district court to do the same for Mr. Childers: "protect his rights and liberty and order . . . [both] his *judgment*[2] *and sentence* [to be] amended." *Id.* at 12 (emphasis added).

Later on the petition contends Mr. Childers should be able to overcome 28 U.S.C. § 2244(d)'s one-year limitation period because (1) he was "sentenced in violation of the provisions and protections of the United States Constitution" and (2) "[a]lso, his rights under the ex-post-facto Clause have been violated by the retroactive application of laws that were not in effect at the time of his conviction." *Id.* at 28. He supports the latter by citing to *Starkey* and *Cerniglia* to argue that the retroactive application of SORA violates Oklahoma's constitution and that his convictions should therefore be voided.

The Oklahoma Attorney General, appearing on behalf of the respondent, acknowledged that Mr. Childers' petition challenged his convictions, *see id.* at 42, but did not respond to his claims that his convictions and sentences were unconstitutional, *see id.* at 43. Instead, the Attorney General argued only that Mr. Childers' petition was time-barred. Flustered that his arguments had been ignored, Mr. Childers' reply on October 30, 2017 faulted the Attorney General's reliance on "procedure as if the procedural default . . . is of more concern, as it obviously is to her, than violation of Constitutional right that has petitioner *not only improperly convicted*, but incarcerated beyond what he should be." *Id.* at 156 (emphasis added). Mr. Childers criticized the state courts for failing to review the

---

[2] The Black's Law Dictionary defines "judgment" as "a court's final determination of the rights and obligations of the parties in a case." *Judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019). Black further defines "judgment of conviction" as "[t]he written record of a criminal judgment, consisting of the plea, the verdict or findings, the adjudication, and the sentence." *Id.*

5

substance of his claims and for "allowing a 'manifest injustice' to remain uncorrected." *Id.* at 157. He reemphasized his claim of innocence, saying "[a] person is not supposed to be held in prison on a *void conviction.*" *Id.* (emphasis added).

The district court issued its opinion on January 6, 2020. It did not say whether it liberally construed Mr. Childers' pro se petition. Nevertheless, it understood the petition as attacking his conviction, saying that Mr. "Childers *challenges his convictions* for failing to update his address as a sex offender and living within 2000 feet of a school." *Id.* at 164 (emphasis added). Later, the court explained that Mr. "Childers contends his *conviction and sentence* are unconstitutional based on: (Ground 1) ex-post-facto violations; (Ground 2) sentencing errors; and (Ground 3) ineffective assistance of counsel." *Id.* at 166 (emphasis added).

The court then turned to the petition's timeliness under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d). It recognized that the one-year period could be extended through equitable tolling or "'overcome' through 'a credible showing of actual innocence.'" *Id.* After concluding that equitable tolling did not apply, however, the court denied the petition as time-barred without evaluating whether Mr. Childers had a colorable claim of actual innocence to excuse the procedural default.[3]

---

[3] As we recognized in *Farrar v. Raemisch*, 924 F. 3d 1126, 1130 (10th Cir. 2019), "[a] distinction exists between claims of actual innocence used as a gateway and as a freestanding basis for habeas relief. As a gateway, a claim of actual innocence 'enable[s] habeas petitioners to overcome a procedural bar' in order to assert distinct claims for constitutional violations,'" quoting *McQuiggin v. Perkins*, 596 U. S. 383, 386 (2013).

6

Mr. Childers appealed, filing a pro se Combined Opening Brief and Application for a Certificate of Appealability (opening brief). He again relied on *Starkey* and *Cerniglia* to attack his convictions based on retroactive application of SORA: "To apply a law enacted after the fact is a violation of the principals of ex post facto and a violation of a petitioner's rights, liberty and protections under the constitution of the United States." Aplt. Br. at 4. He argued "the state violated Petitioner's constitutional rights and *convicted him of charges that do not apply to him*." *Id.* at 8 (emphasis added); *see also id.* at 9 ("what he has come up against is the state and the federal courts avoiding what he has an undeniable right to have. His freedom from prison and a *wrongful conviction*.") (emphasis added).

Specifically, he criticized the district court's failure to consider his claim of innocence before dismissing his petition based on the equitable tolling issue: "the federal court has been more concerned with application of AEDPA limitation than the violation of an individual's constitutional rights, liberties, and protections." *Id.* at 4. He reiterated his innocence, saying "[h]e is in prison for violating a law that does not apply to his case, or the sentence he received for violating the law that should not have been applied against him." *Id.* at 5. He explained, "[l]ike the appellate [sic] in the *Starkey* case Petitioner falls under the provisions of the law in effect in 1998. Subsequent changes in state law are not applicable to his case, but have been applied unconstitutionally." *Id.* at 7.

Mr. Childers' brief also criticized the state courts and the federal district court for not reviewing his gateway innocence claim under the plain error standard: "Petitioner believes that he has a substantial Plain Error violation that has been ignored by state

7

court's [sic] and overlooked by the federal [district] court in it's [sic] zeal to apply the AEDPA time bar to Petitioner's claim." *Id.* at 9.  He conceded that the district court correctly assessed his claims as time barred but explained "that his situation comes within the provision of plain error, which this Court has the authority and discretion to correct." *Id.* at 9.

In granting the COA, Judge McHugh liberally construed Mr. Childers' opening brief and understood it to make an "actual innocence" claim.  She explained that although Mr. Childers "did not use the phrase 'actual innocence' in his application for a COA, his ex post facto argument necessarily implicates his guilt."  COA at 6 n. 3.  She thus granted a COA to decide whether Mr. Childers has a colorable claim of actual innocence to overcome the untimeliness of his habeas petition.  Counsel was appointed to represent Mr. Childers on appeal.

## II.

The majority refuses to consider Mr. Childers' ex post facto arguments based on its erroneous understanding that his petition "challenged *only* the constitutionality of his sentences under the Oklahoma ex post facto clause; [it] did not assert actual innocence or claim that his convictions were invalid."  Opinion at 12 (emphasis added).  It insists that Mr. Childers "asserted for the first time in these proceedings ex post facto challenges to his convictions," *id.* at 9, and thus our rule against considering issues for the first time on appeal precludes considering whether his convictions are unconstitutional.

The majority is incorrect.  Its narrow reading of the petition simply ignores both Mr. Childers' many statements about his conviction—for example, saying he was

8

"improperly convicted," imprisoned based on a "void conviction," and wrongfully "convicted [] of charges that do not apply to him"—as well as the district court's understanding that Mr. Childers "challenge[d] his convictions." That Mr. Childers challenged the constitutionality of his convictions seems evident even without liberally construing his petition.

## A.  *Challenging his convictions*

Mr. Childers' pro se § 2254 petition challenged the constitutionality of both his convictions and his sentence, saying his "rights [were] violated by ex-post facto application of laws not in effect at the time of conviction." ROA at 8. He argued that the holdings of *Starkey* and *Cerniglia* make "clear the manner new laws are to be applied to previous violations of law, forbidding retroactive punishments to be levied." *Id.* at 12. In those cases "the Courts recognized the constitutional violation of the individuals inherent rights as a result of a retroactive application of law, and did *modify the convictions* of those individuals." *Id.* at 28 (emphasis added). Here too, "the state wrongfully applied law[s that were] implemented after [Mr. Childers'] predicate offense" to convict him. *Id.* at 24. As a result, he was "improperly convicted," *id.* at 156, and illegally incarcerated based on a "void conviction," *id.* at 157. He asked the court to invalidate both his sentence and conviction.

The majority does not attempt to reconcile its limited understanding of Mr. Childers' claims with his many direct attacks on his convictions. Nor does it say how arguments against his "void convictions" at the district court comport with the assertion that Mr. Childers waited until after we granted a COA to bring his "ex post facto

9

challenges to his *convictions*." Opinion at 10. The majority's interpretation is also incompatible with Mr. Childers' binary request that the district court "order . . . his judgment *and* sentence amended," ROA at 12, or his complaint that courts have wrongfully denied "[h]is freedom from prison *and* a wrongful conviction." *Id*. at 9. The majority does not say how Mr. Childers' objection to being "not only improperly convicted, but [also] incarcerated beyond what he should be," ROA at 156, challenges the latter but not the former. Instead of reconciling these conflicts, the majority simply disregards these attacks on his convictions and resulting sentences as "few words and phrases" that, when viewed in proper context, show "the focus of his challenge before the district court was to his life sentences, not his convictions." *Id.* n. 3. This seems more like verbal gymnastics than logical reasoning. The majority seems to concede that Mr. Childers challenged his convictions but suggests that he nevertheless fell short because his "focus" was elsewhere. How many more "words and phrases" should a pro se petitioner such as Mr. Childers have used to make his challenge to his conviction worthy of our review? Also, what are we to make of the "few words and phrases" that he did use to attack his conviction? The majority does not say.[4]

_____

[4] The majority also says that anytime Mr. Childers mentioned his sentence, that "context" justifies ignoring "words and phrases" that attack his convictions, Opinion at 9-10 n. 3, notwithstanding the fact that Mr. Childers filed his petition pro se. Context means "the parts of a written or spoken statement that precede or follow a specific word or passage, usually influencing its meaning or effect." *Context*, DICTIONARY.COM, https://www.dictionary.com/browse/context (last visited May 21, 2021). But the majority does not say how the words surrounding phrases like "wrongful conviction," "improperly convicted," "judgment" make these attacks consistent with the majority's narrow reading of the petition. Instead, the examples that the majority cites in footnote 3 make clear that

As pointed out above, the district court also understood that Mr. Childers was challenging both his convictions and his sentence. In introducing the case, it said Mr. "Childers *challenges his convictions* for failing to update his address as a sex offender and living within 2000 feet of a school." *Id*. at 164. Later, the court reiterated that Mr. "Childers contends *his conviction and sentence* are unconstitutional . . . ." *Id*. at 166. Here again, the majority neither explains how its reading is consistent with that of the district court nor does it say whether the court's understanding was erroneous. The majority simply ignores these contradictions.[5]

Further, the majority's interpretation is belied by the respondent's acknowledgement that Mr. Childers' § 2254 petition "claimed that his convictions violated the ex post facto clause of the Oklahoma Constitution." Aple. Br. at 7. Indeed, the Oklahoma Attorney General frames Mr. Childers' "ex post facto arguments" as one that "attack[s] the alleged retroactive application of the SORA to his conduct in this case, and which challenge the lawfulness of his convictions under Oklahoma state law." *Id.*

---

by reading the petition "in context" the majority simply deletes any phrase that contradicts its view.

[5] The majority dismisses this reading of the district court's statements stating "Because . . . Childers' ex post facto arguments targeted only his sentences, we believe that the district court's statements regarding the convictions was likely referring to the ineffective assistance of counsel claim." Opinion at 7 n. 2. In other words, because the majority believes that Mr. Childers' ex post facto arguments "targeted only his sentence," *i.e.* did not target his conviction, then the district court must have also understood his ex post facto arguments as not challenging his conviction. This reasoning is peculiar because it predicates the district court's understanding of Mr. Childers' petition on the majority's understanding of the petition. As such, the majority transposes its own misunderstanding of the petition to the district court.

11

at 9-10; *see also id.* at 15 ("Petitioner's complaint about the alleged ex post facto effect of his convictions does not amount to a showing of actual innocence . . . ."); *id.* at 21 ("[petitioner] argues that his conviction violates the ex post facto clause because this crime did not exist when he committed his original crimes, in 1992, and when he ultimately became subject to SORA, in 1998."). Again, the majority makes no attempt to resolve the conflict.

In short, the majority's view that Mr. Childers' ex post facto arguments did not attack his convictions contradicts not only my reading of his pro se petition, but also that of the district court (even without liberally construing his petition), our colleague Judge McHugh, and the Oklahoma Attorney General. As such, the majority's interpretation of his pro se petition is impermissibly narrow.

## B. Gateway Claim of actual innocence

Mr. Childers' pro se habeas petition asked the district court to decide whether he should continue to be incarcerated notwithstanding intervening Oklahoma Supreme Court decisions that render his convictions unconstitutional. As such, his petition is at the intersection of two important themes. First, his habeas petition is a "fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969). Second, his gateway claim of innocence, also known as "fundamental miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (citation

12

and quotation marks omitted).  The district court erred by failing to liberally construe Mr.

Childers' pro se petition and to address his innocence claims.

**i.**

A habeas claim is "the first line of defense against constitutional violations."

*Bounds v. Smith*, 430 U.S. 817, 828 (1977).  "Given the fundamental importance of the

writ, it is essential that it be 'administered with the initiative and flexibility essential to

insure that miscarriages of justice within its reach are surfaced and corrected.'"  *Brown v.

Vasquez*, 952 F.2d 1164, 1166 (9th Cir. 1991) (quoting *Harris*, 394 U.S. at 291).  Indeed,

"habeas corpus is not a static, narrow, formalistic remedy, but one which must retain the

ability to cut through barriers of form and procedural mazes."  *Hensley v. Mun. Ct., San

Jose Milpitas Judicial Dist., Santa Clara, Cal.*, 411 U.S. 345, 349-50 (1973) (citations and

quotations omitted).  Accordingly, courts have liberally construed pro se litigants' habeas

petitions to discern the petitioners' intent.  *See Brown*, 952 F.2d at 1166 (construing

motion to appoint counsel to prepare habeas petition and to stay execution as habeas

petition); *Tyler v. United States*, 929 F.2d 451, n.5 (9th Cir. 1991) (construing motion

pursuant to § 2255 as petition for habeas pursuant to § 2241); *Tucker v. Carlson*, 925 F.2d

330 (9th Cir. 1991) (civil rights and *Bivens* action construed as habeas petition); *Greene v.

Meese*, 875 F.2d 639, 641 (7th Cir.1989) (same); *see also Laws v. Lamarque*, 351 F.3d

919, 924 (9th Cir. 2003) (pro se habeas filings must be construed liberally, and court may

treat allegations in verified complaint or petition as affidavit).

Additionally, Mr. Childers' gateway claim of innocence requires a particularly

close examination of his pro se habeas petition under a less demanding standard.  *Schlup*

13

*v. Delo*, 513 U.S. 298, 324 (1995) ("[T]he individual interest in avoiding injustice is most compelling in the context of actual innocence . . . merit[ing] protection by imposing a somewhat less exacting standard of proof on a habeas petitioner alleging a fundamental miscarriage of justice than on one alleging that his sentence is too severe."); *cf. Prost v. Anderson*, 636 F.3d 578, 600 (10th Cir. 2011) (quoting *Murray v. Carrier*, 477 U.S. 478, 501 n.8 (1986)) (Seymour, J., concurring) ("Claims of actual factual innocence have been recognized in constitutional and habeas jurisprudence as among 'the most compelling cases[s] for habeas review.'"). *See also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("Decisions of this Court support [petitioner's] view of the significance of a convincing actual-innocence claim."); *Murray*, 477 U.S. at 498-96 (describing actual innocence as "an extraordinary case" in which "principles of comity and finality . . . must yield to the imperative of correcting a fundamentally unjust incarceration.") (internal quotation marks omitted); *In re Davis*, 557 U.S. 952 (2009) (commenting that actual innocence claims require careful scrutiny even when they are brought in a successive collateral attack.).

If a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial . . . the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. The Supreme Court in *McQuiggin* recognized a colorable claim of actual innocence as an exception to the AEDPA limitation period. It also emphasized that the principle of actual innocence had long been applied "to overcome various procedural defaults," including:

> [1] "successive" petitions asserting previously rejected claims, *see Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) (plurality opinion);
> [2] "abusive" petitions asserting in a second petition claims that could have

14

been raised in a first petition, *see McClesky v. Zant*, 499 U.S. 467, 494-95 (1991); [3] failure to develop facts in state court, *see Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11-12 (1992); and [4] failure to observe state procedural rules, including filing deadlines, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991); [*Murray v.*] *Carrier*, 477 U.S. [478], 495-96 (1986).

*McQuiggin*, 569 U.S. at 392-93. In addition, (5) a federal defendant's "failure to raise a constitutional objection on direct review" is also overcome by a gateway claim of actual innocence. *Bousley v. United States*, 523 US. 614, 622 (1998).

This Court and other jurisdictions have also waived various procedural defaults to prevent the manifest injustice of continuing to incarcerate an innocent person. *Lopez v. Trani*, 628 F.3d 1228, 1230-31 (10th Cir. 2010) (a petitioner who is actually innocent can overcome procedural barriers like the statute of limitations); *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (allowing review of time-barred issue because of gateway claim of actual innocence); *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005) ("equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate."); *San Martin v. McNeil*, 633 F.3d 1257, 1267-68 (11th Cir. 2011) ("A court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a 'fundamental miscarriage of justice' because it would require that an individual who is actually innocent remain imprisoned."); *Jones v. State*, 591 So.2d 911, 915-16 (Fla. 1991) (permitting gateway claim of actual innocence based on new evidence in a writ of error coram nobis); *In re Clark*, 5 Cal. 4th 750, 760 (1993) (gateway claims of factual innocence based on newly discovered evidence permitted at any time regardless of delay or failure to raise claim previously); *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996) (permitting a gateway claim

15

of actual innocence action in the interest of justice); *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 546 (Mo. 2003) (affirming actual innocence "as a 'gateway' that entitles the prisoner to review on the merits of the prisoner's otherwise defaulted constitutional claim" in state habeas cases.); *State v. Armstrong*, 283 Wis.2d 639, 680 (2005) (state supreme court could use its inherent authority remedy a miscarriage of justice even where a defendant's appeal is not direct).

## ii.

Mr. Childers' pro se habeas petition was entitled to a liberal construction. If the district court afforded his petition a liberal construction, it did not expressly say so. I am persuaded it did not because a liberal construction of Mr. Childers' ex post facto argument would have yielded to an understanding of his claim of innocence.

The rule that we must liberally construe a pro se petition is rooted in the understanding that "we can hardly demand of a layman and pauper who draws his petition behind prison walls the skill of one trained in the law." *Tomkins v. Missouri*, 323 U.S. 485, 487 (1945). As the court said in *Price v. Johnston*, 334 U.S. 266, 292 (1948):

> Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession. Especially is this true in a case like this where the imposition of those standards would have a retroactive and prejudicial effect on the prisoner's inartistically drawn petition.

*See Sanders v. United States*, 373 U.S. 1, 22 (1963) ("An applicant for [collateral] relief ought not to be held to the niceties of lawyers' pleadings."); *see also Burris v. United States*, 430 F.2d 399, 402 (7th Cir. 1970) ("The petition was filed pro se and its

16

allegations, though vague and conclusory, are entitled to a liberal construction. It is difficult, in many instances, to require great specificity and persuasion in a Section 2255 petition." (citation omitted).

In this Circuit, the "mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). As such, courts must ensure that a pro se petition is afforded "a construction not immediately apparent." *Id.*

To be sure, liberally construing a pro se petition can be difficult. First, pro se litigants are "often so unskillful as to be a burden on the courts which receive them." *Johnson*, 393 U.S. at 488; *cf. Barnett*, 174 F.3d at 1133 ("The task of sorting th[r]ough pro se pleadings is difficult at best."). Second, the courts' obligation to construe pro se filings liberally is at constant tension with the duty against assuming the role of an advocate: liberally construing a pro se pleading does not mean supplying additional factual allegations or offering a legal theory on a petitioner's behalf, *see Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997); nor does it mean that the courts may "rewrite a [habeas] petition to include claims that were never presented," *Milton v. Miller*, 812 F.3d 1252, 1263 n.17 (10th Cir.) (internal quotation marks omitted). In sum, liberally

17

construing a pro se petition for claims not immediately apparent is like walking a

tightrope; it requires diligently balancing our competing duties with each step.

### iii.

The question here is whether a reasonable reading of Mr. Childers' petition reveals

a valid claim of actual innocence on which he could prevail, even if that "construction [is]

not immediately apparent," *Barnett*, 174 F.3d at 1133. My answer is yes.

First, I agree with the COA order that Mr. Childers' ex post facto challenges to his

2009 convictions "necessarily implicates his guilt." As explained, Mr. Childers' petition

claimed that he was erroneously convicted of violating versions of SORA that were

inapplicable to him. Judge McHugh's order granting a COA said that even though Mr.

Childers did not use the phrase actual innocence, "his ex post facto argument necessarily

implicates his guilt." COA at 6, n. 3. Conviction and innocence are on the opposite sides

of the coin, and therefore Mr. Childers' challenges to his convictions necessarily raise the

claim that he is innocent from those convictions.

Second, Mr. Childers' petition presents a familiar "actual innocence" framework

that the Supreme Court adopted in *Bousley*. Even though this was more likely by

coincidence than by design, presenting that approach compels a closer scrutiny.[6]

---

[6] The majority does not challenge this reasoning but instead says it "believe[s] the more common and recognizable actual innocence claim is one where a petitioner presents new evidence that they did not commit the criminal conduct they were convicted of committing." Opinion at 12 n. 5. But the holdings of the *Starkey* and *Cerniglia are* "new evidence" that Mr. Childers was not subject to 2006 SORA at the time of his convictions. Evidence is "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." *Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019). As such, those cases are "documents" showing that Mr.

18

The petitioner in *Bousley* had pled guilty to "using" a firearm in 1990 in violation of 18 U.S.C. § 924(c)(1). Five years after his conviction, the Supreme Court decided *Bailey v. United States*, 516 U.S. 137 (1995), which held that the "use" prong of § 924(c)(1) required the government to show "active employment of the firearm." Thereafter, the *Bousley* petitioner filed a habeas petition, arguing he should be given the chance to overcome procedural defaults and to show he was innocent of violating § 924(c)(1) under *Bailey*'s interpretation of "use." The Supreme Court agreed and gave the petitioner a chance to prove his actual innocence based on *Bailey*'s new interpretation of § 924(c)(1). *See Phillips v. United States*, 734 F.3d 573, 580-82 (6th Cir. 2013) ("*Bousley* established an analytical framework for addressing actual innocence claims based upon a claim of legal innocence occasioned by an intervening change in law."); *United States v. Davies*, 394 F.3d 182, 191-92 (3d Cir. 2005) (relying on *Bousley* to hold that the petitioner was "actually innocent" of burning a church in violation of 18 U.S.C. § 844(i) in light of an intervening change in the law that narrowed § 844's interstate commerce requirement).

In his § 2254 petition, Mr. Childers relied on *Starkey* and *Cerniglia*'s interpretation of Oklahoma's ex post facto clause as applied to SORA to argue he was innocent of violating later versions of SORA. His approach mirrors *Bousley's* framework. His predicate sex crime conviction was in 1999. He was convicted of violating the 2006 version of SORA in 2009. Thereafter, the Oklahoma Supreme Court held in 2013 that a

---

Childers' conduct fell short of including an element of his crime of conviction, namely being subject to 2006 SORA.

person can be convicted under only the version of SORA in effect at the time of that person's predicate conviction. Based on this "new and intervening" law, ROA at 11, Mr. Childers claimed he should be given the opportunity to overcome procedural bars to raise his ex post facto claim because he was innocent of violating the 2006 SORA.

Mr. Childers' petition applied *Bousley*'s framework to assert that "the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar" his petition. Specifically, he argued that the Oklahoma Supreme Court in *Starkey* and *Cerniglia* invalidated the judgment against individuals convicted under a later version of SORA to ensure their constitutional rights were no longer violated. *Id.* at 28. He asked the district court to do the same for him. In light of this reasoning, our order granting a COA cited *Bousley* for the proposition that "an intervening judicial decision may provide the basis for a viable actual innocence claim that was not previously available." COA at 6.

Finally, and importantly, liberally construing Mr. Childers' petition in this way would not force the court to assume the role of an advocate. Because his petition unequivocally attacks his 2009 convictions and because it uses a familiar "actual innocence" framework, liberally interpreting his petition readily yields his actual innocence claim. As demonstrated above, identifying his innocence claim requires neither that we supply facts, allegations, or a legal theory on Mr. Childers' behalf, *see Whitney*, 113 F.3d at 1173-74, nor that we rewrite his petition to include claims not presented, *Milton*, 812 F.3d at 1263 n.17. Indeed, district courts in this Circuit and elsewhere have long liberally construed pro se petitions as raising actual innocence gateway claims even

20

when petitioners themselves did not directly invoke it.[7] *See Hunter v. Keith*, No. CV-10-320-F, 2011 WL 3847016, at \*8 (W.D. Okla. July 29, 2011) ("The Petitioner does not invoke the fundamental miscarriage of justice exception.  However, he does challenge the sufficiency of the evidence, and the Court may assume arguendo that Mr. Hunter had intended to invoke the exception based on actual innocence."); *Branch v. Howard*, No. CIV-10-54-W, 2011 WL 3584587, at \*5 (W.D. Okla. July 6, 2011) ("In one place, he states unambiguously that 'there is no miscarriage of justice.'  However, he also refers to 'his innocence.'  The Court may assume arguendo that Mr. Branch had intended to invoke the exception based on actual innocence."); *Mitchell v. Arizona*, No. CV-15-2229-PHX-JAT, 2017 WL710069, at \*9 (D. Ariz. Jan. 24, 2017) (evaluating a petitioner's actual innocence even though "Petitioner d[id] not proffer any grounds for equitable tolling, apart from Petitioner's lack of training."); *Johnson v. Bellnier*, No. 09-CV–00381, 2010 WL7100915, at \*10 n. 19 (E.D.N.Y. Nov. 8, 2010) ("Although [an actual innocence] argument is not specifically made by Johnson in his pro se petition or counseled reply, the basis of his claim is that as a matter of law he could not have been guilty of depraved indifference murder because the evidence at trial supported only intentional acts.  His arguments show a colorable claim of 'actual innocence' and so the Court should address the issue in the interest of justice."); *Woldsmit v. Mooney*, No. 15-5607, 2016 WL2940449, at \*4 (E.D. Pa. Mar. 8, 2016) ("This court will assume that this pro se petitioner is asserting that the AEDPA statute of limitations should be equitably tolled

---

[7] To the extent these decisions are unpublished, we find them persuasive.

21

based upon a claim of actual innocence" because his pro se petition challenged his convictions.).

In short, Mr. Childers' petition challenged his 2009 convictions, which necessarily implicates his innocence. Additionally, his petition mirrors *Bousley's* "actual innocence" framework to argue he is innocent based on intervening changes to the law. A reasonable reading of his petition reveals that Mr. Childers stated a valid claim of actual innocence on which he could prevail, even if that "construction [is] not immediately apparent." Here, the district court erred by failing to construe Mr. Childers' pro se petition liberally to identify and to evaluate his actual innocence claim.

**iv.**

The majority says we need not concern ourselves with whether Mr. Childers has a credible actual innocence claim because his petition did not use two magic words: "actual innocence." It bases that conclusion on *Heath v. Soares*, 49 F. App'x 818, 821 (10th Cir. 2002) (unpublished), "a case with similar circumstances," the majority asserts, in which "we rejected a habeas petitioner's argument 'that although he may not have . . . used the term 'actual innocence' in his petition before the district court, he could still make the claim on appeal because he had generally asserted his innocence." Opinion at 11-12. I disagree both with the majority's reading of *Heath* and with the majority's conclusion.

First, cursorily dismissing a pro se petitioner's seemingly credible claim of innocence solely because he failed to reference a legal phrase raises the bar of justice far too high for far too many people. The majority's requirement that pro se petitioners must use certain magic words before their substantive claims get reviewed runs afoul of our

22

obligation to construe pro se filings liberally and our obligation towards justice. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). As far as I can ascertain, this requirement would make us the first circuit to condition pro se litigants' ability to seek justice on using exact legal jargon.

Second, the majority's dubious conclusion rests on its incorrect understanding of an unpublished opinion, which presented circumstances that are different from this case. In fact, a closer scrutiny of *Heath* reveals that despite the one-liner that the majority quotes, the panel explored the petitioner's pleadings in search of support for his claim of innocence.

The panel in *Heath* found it significant that the petitioner had done "nothing more than use the words 'actual innocence' in his appeal papers." *Heath*, 49 F. App'x at 822. Indeed, "[h]e cite[d] no portion of the record nor any new evidence that support[ed] his claim. There [was] no evidence, therefore, upon which we could base the exercise of the 'manifest injustice' exception to the rule that we will not consider arguments not raised below." *Id.* Here, to the contrary, Mr. Childers' claim of innocence based on his ex post facto convictions was at the heart of his petition before the district court. Indeed, Mr. Childers has challenged the validity of his "void conviction" at every turn, militantly arguing against the legitimacy of his convictions under a later version of SORA. Unlike the petitioner in *Heath*, therefore, Mr. Childers' omission is not his failure to offer arguments supporting his innocence claim; instead, his error is limited only to not using the magic words "actual innocence" in his petition. In fact, refusing to review his innocence claim on that basis is not supported by any of the cases that the majority cites.

Furthermore, the fact that in *Heath* we searched the petitioner's pleadings for evidence of his actual innocence highlights how differently the majority treats Mr. Childers' petition here. If the majority were willing to explore his pleadings as generously as this Court did in *Heath*, it would surely find that Mr. Childers has in fact presented arguments in support of his innocence.

Moreover, to the extent we may rely on unpublished cases for their persuasive value, I believe that *Titsworth v. Mullin*, 415 F. App'x 28 (10th Cir. 2011) (unpublished) is more factually similar and more in line with our duties when reviewing pro se habeas pleadings. In *Titsworth*, we considered a pro se petitioner's request for a COA based on his argument that his sentence violated "his due process rights because the sentence exceed[ed] the statutory maximum." *Id.* at 30. We disagreed because, like Mr. Childers, he "was convicted . . . after two prior felonies, which carries a maximum sentence of life imprisonment." *Id.* But we did not stop there.

"Construing Titsworth's filings liberally," we said, "it appears he is not advancing a claim based on an excessive sentence for the crime of conviction, but rather contending that he should not have been found guilty of the crime of conviction." *Id.* Indeed, because the petitioner had argued that none of his prior crimes qualified as an enhancing felony under Oklahoma law, we understood his argument as claiming he "was improperly convicted under that statute." *Id.* at 31. We therefore said his "argument could be read as

either an insufficiency of the evidence claim, or as an actual innocence claim."[8] *Id.* We then proceeded to evaluate both of those possibilities. *See id.*

*Titsworth*'s persuasive value is not only in its factual similarities, but also in its consistency with the Supreme Court's "actual innocence" jurisprudence "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera*, 506 U.S. at 404. Indeed, in *Titsworth* we evaluated the petitioners' claims of actual innocence to decide whether, despite his failure to raise a claim of innocence, his petitions could reasonably be construed to allege actual innocence. We did so because he had raised "serious questions" about the validity of his convictions. *Id.* at 32. Because Mr. Childers has made a strong case that his convictions under the 2006 SORA are invalid, we should either follow our example in *Titsworth* and evaluate his innocence or remand to the district court to do the same.

In sum, Mr. Childers' petition both challenged his convictions and argued that based on the intervening changes in the law he was innocent of violating the 2006 version of SORA. The district court understood that Mr. Childers' petition challenged his convictions but failed to liberally construe his petition to scrutinize his actual innocence claim and to decide whether he could "overcome" AEDPA's limitation through "a

---

[8] Even though Mr. Childers has challenged his conviction and thus is entitled to a review of his actual innocence claim, it is noteworthy that in *Titsworth* we read the petition liberally to construe the petitioner's challenge to his sentence as challenging his conviction. We evaluated his potential claim of actual innocence even though he had only attacked his sentence. Here, even if the majority is correct that Mr. Childers' petition only challenged his sentence, under *Titsworth*'s reasoning, we would still need to assess his actual innocence claim.

credible showing of actual innocence."[9]  This was an error that should be rectified, not ignored.

## III.

Next, the majority overlooks the possibility of reviewing Mr. Childers' claims under the plain error standard.

"Unlike waived theories, we will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result."  *United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012) (quoting *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011)).  "In other words, where a defendant has forfeited an issue in the district court, in order to prevail in an appellate challenge regarding that issue, a defendant must make a sufficient showing of error under the plain-error standard."  *Id.*  A plain error "occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1122-23 (10th Cir. 2005).

---

[9] The majority says, "if the district court understood Childers's petition as raising a claim of innocence, as the dissent contends, it is hard to see why it would not then evaluate such a claim. Rather than committing reversible error in ignoring a claim it understood to be raised in the habeas petition, it is more likely that the district court did not understand Childers's petition as raising a claim of innocence."  Opinion at 7 n. 2.  To be clear, the district court understood Mr. Childers' petition as challenging his conviction but held the claim was barred by the statute of limitation.  That the district court did not evaluate Mr. Childers' claim of innocence by no means supports the majority's contention that "the district court did not understand Childers' petition as raising a claim of innocence."

As explained, the district court expressly identified Mr. Childers' challenge to his convictions. It also recognized that Mr. Childers could either extend the limitation period through equitable tolling or "overcome" it through "a credible showing of actual innocence." ROA at 166. However, the court failed to assess his gateway claim of actual innocence. Consequently, on appeal Mr. Childers conceded that he cannot "argue against the fact that his AEDPA clock ran out, [but] assert[ed] that his situation comes within the provision of *plain error*, which this Court has the authority and discretion to correct." Aplt. Br. at 9 (emphasis added).

Mr. Childers alleged an error had occurred because his innocence from retroactive application of SORA was "overlooked by the federal [district] court."[10] Aplt. Br. at 9. He asked for "enforcement of his right to freedom as it has been determined by the State Supreme Court recognition and application of federal rights to situations and cases such as his." *Id*. Further, he suggested the error impacted the fairness, integrity, or public reputation of judicial proceedings, explaining that "[w]hat he has come up against is the state and the federal courts avoiding what he has an undeniable right to have. His freedom from prison and a wrongful conviction." *Id*. Mr. Childers argued that the error is plain, explaining that "the proper application of the Constitutional provisions of law that the Oklahoma Supreme Court determined in *Starkey* must be applied to cases such as Petitioner's." *Id.* at 10. Finally he argued that the failure to "consider the matter outside

---

[10] Although Mr. Childers' brief refers to "federal appeals court," the context clarifies that he means to say the federal district court "overlooked" his innocence claim by focusing only on his equitable tolling arguments.

the limited view of an AEDPA bar" (in other words, the failure to consider his actual innocence claim), deprived him of "substantial rights" of having his "liberty." *Id.*

In short, Mr. Childers' assertion that "his situation comes within the provision of plain error" that we can review, together with his arguments that he could succeed under a plain error review, requires reviewing the district court's dismissal of his gateway actual innocence claim for plain error.

## IV.

The majority sees yet another reason to shut our doors on Mr. Childers, namely that "the ex post facto claims he now presents differ substantially from the claim granted in the COA." Opinion at 13. In the majority's view, Mr. Childers first failed to raise the claim that his convictions violated the Oklahoma ex post facto clause, and then he changed his argument with respect to his § 590 conviction. So the majority says that "accepting Childers's argument would run counter to our role as 'a court of review, not of first view.'" *Id.* at 16 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 719 n.4 (2005)).

As to the first point, Mr. Childers' § 2254 petition unequivocally challenged his convictions as unconstitutional based on retroactive application of SORA. The district court and the respondent's brief both understood and articulated this. I have also demonstrated the fallacy in the majority's view. This point is therefore moot.

As to the second point, the majority is correct that Mr. Childers' pro se brief raised a different argument for his § 590 conviction than his supplemental opening brief, filed by his court-appointed counsel. As to his conviction for living within 2,000 feet of a school, based on the best he was "able to ascertain," ROA at 140, Mr. Childers thought the statute

was in place at the time of his 1999 conviction. However, benefitting from his attorney's research skills, he now recognizes that § 590 was not in place at the time of his conviction, and therefore contends he was not subject to it under *Starkey*.

In his supplemental opening brief, Mr. Childers contends that because he is actually innocent "he overcomes the time limitation for the filing of this habeas action, *and any other procedural failing*." *Id.* at 25 (emphasis added). Indeed, he asked us to "expand the COA to include the claims made in the supplemental brief[]." *Id.* The majority "decline[s] to do so," reasoning that "accepting Childers's argument would run counter to our role as 'a court of review, not of first view.'" Opinion at 16 (quoting *Cutter*, 544 U.S. at 719 n.4). But inherent in the majority's concern is its false assumption that our choices are limited to either reviewing his new arguments on appeal or shutting the doors of justice on a prisoner with a seemingly credible claim of innocence. There are other courses: we can either expand the scope of the COA[11] and review his claims, which the majority refuses to do, or remand to the district court.

In sum, Mr. Childers' § 2254 petition challenged the constitutionality of his convictions based on an intervening change in the law and argued that he should be able to overcome AEDPA's one-year statute of limitations based on his claim of actual innocence. The district court correctly understood that Mr. Childers had raised a claim of

---

[11] We have the inherent "authority to expand the COA to cover uncertified, underlying constitutional claims asserted by an appellant." *United States v. Shipp*, 589 F.3d 1084, 1087 (10th Cir. 2009). Therefore, we can expand the COA and evaluate his claim of innocence ourselves or remand to the district court, which would both address the majority's concerns and ensure that we see to it that "constitutional errors do not result in the incarceration of innocent persons." *McQuiggin*, 569 U.S. at 392.

29

innocence regarding his 2009 convictions but failed to evaluate his arguments for a showing of actual innocence.  A remand would give the district court the opportunity to correct its error and would further reaffirm that this Court does not "cast[] a blind eye toward innocence."  *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998) (quoting *Herrera*, 506 U.S. at 404).  The majority's decision today, however, allows the miscarriage of justice to continue undisturbed.